UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3·31·2013

IHS DIALYSIS INC., IHS DIALYSIS OF
MASSACHUSETTS, LLC, and IHS OF
NEW YORK, INC.,

           Plaintiffs,

- against -

DAVITA, INC.,

           Defendant.

**OPINION AND ORDER**

12 Civ. 2468 (ER)

Ramos, D.J.:

    Plaintiffs IHS Dialysis, Inc., IHS Dialysis of Massachusetts, LLC, and IHS of New York, Inc. ("Plaintiffs" or "IHS") brought suit against Defendant Davita, Inc. ("Davita" or "Defendant"), pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, alleging four causes of action: monopolization, attempted monopolization, and conspiracy to monopolize all in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; and conspiracy to restrain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Doc. 9 ("Am. Compl.") ¶¶ 176-200.

    Before the Court are Defendant's Motions to Dismiss the Amended Complaint, Doc. 11, and to Strike. Doc. 13. For the reasons set forth below, Defendant's Motion to Strike is DENIED, and Defendant's Motion to Dismiss is DENIED in part and GRANTED in part, with leave to replead.

**I. Plaintiffs' Claims**

    This lawsuit concerns the market for outpatient dialysis services in certain defined areas of Massachusetts and New York in which the parties operate as competitors. Am. Compl. ¶¶ 2, 11-17. Plaintiffs allege that "[s]ince at least 2007, DaVita has engaged in an intentional and

persistent campaign to obtain, maintain, and enhance its market and, in some cases, monopoly power through its own anticompetitive conduct and by conspiring with others to engage in anticompetitive conduct." *Id.* ¶ 4. Plaintiffs generally allege that DaVita violated Sections 1 and 2 of the Sherman Act by engaging in five types of improper conduct: (1) entering into exclusive, long-term agreements with nephrologists and other referral sources, managed care companies, and pharmaceutical companies, to "lock-up" a significant number of patient referrals, to "lock-up" a significant number of covered lives, and to receive pharmaceutical products at "extremely favorable and, in some cases, predatory pricing [sic]," respectively, *id.* ¶¶ 127-56; (2) engaging in "inappropriate business conduct," including disparaging IHS, threatening current referral sources, patients and staff members, and requiring current employees to sign non-compete agreements, *id.* ¶¶ 80-102; (3) warehousing space and operating licenses, *id.* ¶¶ 157-63; (4) commencing baseless lawsuits and threatening to commence lawsuits against former employees, referral sources, managed care companies, pharmaceutical companies and competitors, *id.* ¶¶ 103-25; and (5) entering into a contract with NxStage that gives DaVita certain "exclusive rights to utilize the NxStage machine" for home-based dialysis ("HHD") in the relevant markets. *Id.* ¶¶ 164-75. Plaintiffs allege that DaVita undertook all of these actions for the purpose of preventing IHS and other competitors from "gaining a foothold" in the relevant markets, *id.* ¶¶ 80, 99, 128, and that DaVita's actions have resulted in a decrease in the quality of care in the relevant markets. *Id.* ¶¶ 5-7, 67-71.

**II. Rule 12(b)(6) Motions to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is

facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 570). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, the "flexible plausibility standard" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007), and "a complaint does not need detailed factual allegations" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

The question on a Rule 12(b)(6) motion "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Sikhs for Justice v. Nath*, No. 10 Civ. 2940 (RWS), --- F. Supp. 2d ----, 2012 WL 4328329, at *15 (S.D.N.Y. Sept. 21, 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of the Ppaintiff's claims. *Halebian v. Berv,* 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). The Court therefore must ordinarily confine itself to the four corners of the complaint and look only to the allegations contained therein. *Id.* (citation omitted). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) (citation omitted); *see also Twombly*, 550 U.S. at 556 ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations," and "a well-pleaded complaint

may proceed even if it appears that a recovery is very remote and unlikely." (internal quotation marks and citations omitted)).

**III. Defendant's Motion to Dismiss and Motion to Strike**

As an initial matter, the Court must address the structure and content of Defendant's motion papers.  In support of its Motion to Dismiss the Amended Complaint in its entirety, Defendant asserts the following seven arguments:  (1) there are no factual allegations to support Plaintiffs' proposed geographic market; (2) Plaintiffs have not alleged a shared, specific intent to monopolize the relevant market to state a Section 2 conspiracy claim; (3) Plaintiffs have not adequately alleged actionable "exclusive dealing claims," (4) Plaintiffs have not adequately plead claims for "predatory pricing/buying," (5) Plaintiffs have not adequately alleged a "disparagement claim," (6) Plaintiffs' allegations of threats do not support a "predatory hiring claim," and (7) Plaintiffs' allegations of warehousing licenses and lease sites, and of initiating and threatening to initiate lawsuits, are barred by the *Noerr-Pennington* doctrine.  *See* Def.'s Mem. Law Supp. Mot. Dismiss, ("Def.'s Mem."), Doc. 12.

Defendant asserts that the relevant market argument applies to all of Plaintiffs' claims, and it is clear that Defendant's second argument is directed only at Plaintiffs' conspiracy to monopolize claim;[1] however, Defendant's remaining arguments are not addressed to any particular element of any particular cause of action in the Amended Complaint.  Indeed, some of Defendant's arguments barely even relate to Plaintiffs' allegations.

Although there are palpable deficiencies in the allegations in the Amended Complaint, Defendant's arguments, and the cases it cites in support, do not squarely and clearly address

---

[1] While the substance of Defendant's argument in the Opening Memorandum could be read as applying to both the § 1 and § 2 conspiracy claims, Defendant explicitly rejected such a reading of the argument in its Reply Memorandum.  Def.'s Reply Mem. Law Further Supp. Mot. Dismiss ("Def.'s Reply Mem.") 9-10, Doc. 21.

4

those deficiencies, or the essential elements of the four causes of action.  Defendant's arguments are deficient in a number of other respects.  Significantly, and as more fully detailed below, Defendant relies on extrinsic materials to *contradict* factual allegations in the Amended Complaint,[2] cites to factually distinguishable cases, cases from outside this Circuit, and cases involving post-trial motions or motions for summary judgment, which are wholly inapplicable in the context of a Rule 12(b)(6) motion to dismiss, and simply ignores many of the allegations in the Amended Complaint.  Many of the factual allegations ignored in its Motion to Dismiss papers are addressed in Defendant's Motion to Strike.  *See* Def.'s Mem. Law Supp. Mot. Strike ("Def.'s Strike Mem."), Doc. 15; Def.'s Reply Mem. Further Supp. Mot. Strike ("Def.'s Strike Reply Mem."), Doc. 22.  However, Defendant was not granted leave to file a motion to strike, and it appears from the content of Defendant's papers that the separately briefed "Motion to Strike" is simply an attempt to assert additional arguments in support of Defendant's Motion to Dismiss, and to evade the page limits for motions set by my Individual Practices, Indiv. Pracs. R. 2(b), and by Standing Order M10-468.  *See* Doc. 2, 8-9.  Such arguments are not properly before the Court and, therefore, Defendant's Motion to Strike is DENIED.

While the Amended Complaint is not a model of clarity or specificity, Defendant has not offered any basis for dismissing any of Plaintiffs' claims for failure to state a claim due to insufficient pleading.  As a consequence of the foregoing, at this early stage of the litigation,

---

[2] Defendant seeks to have the Court take judicial notice of two pending state court actions and a number of documents filed as exhibits in support of its motion to dismiss, and to thereafter rely on those materials to dismiss Plaintiffs' claims.  *See* Def.'s Mem. 5.  Whether or not the existence of the submitted documents are a proper subject of judicial notice, the facts contained therein, which Defendant seeks to offer for their truth, are most certainly not.  *See* Fed. R. Evid. 201; *see also, e.g.*, *Global Network Commc'ns*, 458 F.3d at 157 (citations omitted).  Therefore, the Court has excluded all extrinsic materials submitted by the parties, and disregarded arguments based on materials outside the pleadings in deciding the instant motion, as such arguments are clearly improper in the context of a Rule 12(b)(6) motion to dismiss.  *See* Fed. R. Civ. P. 12(d); *see also Global Network Commc'ns*, 458 F.3d at 156 (holding that district court committed reversible error when, in ruling on a motion to dismiss, it considered matters outside the plaintiff's complaint, and relied on those external materials "to make a finding of fact that *controverted* the plaintiff's [] factual assertions set out in its complaint." (citation omitted)).

except as set forth below, the Court is unable to conclude that Plaintiffs have not adequately alleged their claims.  The Court now turns to an analysis of Plaintiffs' claims.

## IV. Section 2 of the Sherman Act

Section 2 makes it illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations . . . ." 15 U.S.C. § 2.  "While § 1 of the Sherman Act forbids contracts or conspiracies in restraint of trade or commerce, § 2 addresses the actions of single firms that monopolize or attempt to monopolize, as well as conspiracies and combinations to monopolize." *Spectrum Sports Inc.*, *v. McQuillan,* 506 U.S. 447, 454 (1993). Here, Plaintiffs have asserted all three causes of action encompassed by Section 2.

To state a Section 2 claim of monopolization, a plaintiff must allege: "'(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (quoting *United States v. Grinnell Corp.,* 384 U.S. 563, 570-71 (1966)).  To state the offense of attempted monopolization under Section 2, a plaintiff must allege:  "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports,* 506 U.S. at 456 (citation omitted).  To successfully plead a claim of conspiracy to monopolize, a plaintiff "'must allege (1) concerted action, (2) overt acts in furtherance of the conspiracy, and (3) specific intent to monopolize.'" *Discover Fin. Servs. v. Visa U.S.A. Inc.,* 598 F. Supp. 2d 394, 405 (S.D.N.Y. 2008) (quoting *Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 246 (2d Cir. 1997)).

Monopoly power is the power to control prices or exclude competition in a given market. *Grinnell*, 384 U.S. at 571 (citation omitted). It can be pled directly through allegations of control over prices or the exclusion of competition, or it may be inferred from a defendant's large share of the relevant market. *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 500 (2d Cir. 2004) (citing *Tops Mkts., Inc. v. Quality Mkts., Inc.,* 142 F.3d 90, 98 (2d Cir. 1998)). A plaintiff pleading monopolization or attempted monopolization generally must define the relevant market, because "'[w]ithout a definition of that market there is no way to measure [the defendant's] ability to lessen or destroy competition.'" *Spectrum Sports*, 506 U.S. at 455-56 (quoting *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965)).

### A. Relevant Market

The "relevant market" refers to both a relevant product market and a relevant geographic market. *Heerwagen v. Clear Channel Commc'ns,* 435 F.3d 219, 227 (2d Cir. 2006). Defendant asserts that Plaintiffs have failed to adequately plead a relevant geographic market, and that such failure is fatal to all of Plaintiffs' antitrust claims. Def.'s Mem. 10-13. Plaintiffs do not dispute Defendant's contention that a definition of the relevant market is required for each of the four claims in the Amended Complaint.[3] Because Defendant did not object to Plaintiffs' alleged

---

[3] However, the Court notes that "a relevant market definition is not a necessary component of a monopolization claim" where there is direct evidence of monopoly power. *PepsiCo, Inc.*, 315 F.3d at 107-08; *see also F.T.C. v. Ind. Fed'n of Dentists*, 476 U.S. 447, 460-61 (1986) (explaining, in a Section 1 Rule of Reason case, that "[s]ince the purpose of the inquiries into market definition and market power is to determine whether an arrangement has the potential for genuine adverse effects on competition, proof of actual detrimental effects . . . can obviate the need for an inquiry into market power, which is but a surrogate for detrimental effects." (internal quotation marks and citation omitted). Additionally, since "specific intent to monopolize, and not monopoly power, is the essential element when a conspiracy to monopolize is involved," *Hudson Valley Asbestos Corp. v. Tougher Heating & Plumbing Co.,* 510 F.2d 1140, 1144 (2d Cir. 1975) (citation omitted), a relevant market definition is not a necessary element of a Section 2 conspiracy claim, though "the relevant market and the likelihood of its monopolization may have a significant bearing on whether the requisite specific intent to monopolize is present." *Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 340 (S.D.N.Y. 2009) (citations omitted).

relevant product market, the only issue before the Court is whether Plaintiffs have properly defined a relevant geographic market.[4]

"Courts generally measure a market's geographic scope, the 'area of effective competition,' by determining the area in which the seller operates and where consumers can turn, as a practical matter, for supply of the relevant product." *Heerwagen*, 435 F.3d at 227 (quoting *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961)). "Factors relevant to the geographic scope of a market may include barriers to transactions between buyers and sellers of different locations, such as transportation costs to a particular location or start-up costs in that location, as well as the relative preferences of consumers with respect to travel and price." *Id.* at 228 (citation omitted). "Because market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant [] market." *Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001) (collecting cases). At the motion to dismiss stage, a plaintiff must plead a market that is "plausible" and "rational." *Id.* at 201 (citations omitted).

Plaintiffs allege that the geographic market for outpatient dialysis services is local in nature, because patients suffering from end-stage renal disease ("ESRD") are "unwilling or unable to travel long distances to receive dialysis treatment," and patients with chronic ESRD generally require dialysis treatments three times per week for their entire lives. Am. Compl. ¶¶ 25-26, 54-55. Plaintiffs' proposed geographic market is thus "defined by the distance ESRD patients are willing or able to travel to receive dialysis treatments." *Id.* ¶ 54. Plaintiffs allege

---

[4] Defendant argues for the first time in its Reply Memorandum that the Amended Complaint "lacks the necessary factual allegations concerning reasonable interchangeability," in relation to the relevant product market, without any discussion of the allegations in the Amended Complaint. Def.'s Reply Mem. 2. It is well-established that a party cannot assert an argument for the first time in a reply brief; thus, the Court has not considered the merits of this assertion. *See, e.g.*, *Evangelista v. Ashcroft*, 359 F.3d 145, 156 n.4 (2d Cir. 2004) ("'[W]e will not consider an argument raised for the first time in a reply brief.'" (quoting *United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003)).

that "[a]s a general rule, ESRD patients do not travel more than 30 miles or 30 minutes to receive dialysis treatment." *Id.* ¶¶ 55.

The Amended Complaint alleges that DaVita operates outpatient dialysis facilities in 42 States and in the District of Columbia, *id.* ¶ 2, 57, and that IHS currently operates dialysis centers in the Bronx, New York, Flushing, New York, and Quincy, Massachusetts. *Id.* ¶ 8. In combination with the general rule described in the prior paragraph, Plaintiffs define the relevant geographic market for purposes of this lawsuit as encompassing four locations: (1) the Bronx, Manhattan and Westchester County, New York; (2) Flushing, New York; (3) Quincy, the South Shore, and the southern part of the Boston, Massachusetts metropolitan area; and (4) "other areas and markets in which IHS currently is in the process of planning for or opening facilities."[5] *Id.* ¶ 58. Defendant does not dispute Plaintiffs' claim that the geographic market for outpatient dialysis services is local in nature, and the Court concludes that Plaintiffs' proposed definition is rational and plausible in this respect. *See, e.g.*, *Heerwagen*, 435 F.3d at 228 ("In certain service industries, the geographic market may be confined by the fact that it can be impractical for consumers to travel great distances to procure particular services.").

Disregarding Defendant's arguments based on the extrinsic materials submitted, Defendant's only challenges to Plaintiffs' definition of the first three markets are that the Amended Complaint contains "no explanation . . . of why the relevant geographic markets are not any narrower or broader," Def.'s Mem. 11-12, and that the Quincy Market is "amorphous, overbroad, and legally untenable." *Id.* at 13. However, Defendant does not cite any case law to support either assertion. Therefore, the Court concludes that, at the pleadings stage, Plaintiffs

---

[5] For simplicity, the Court refers to the first three markets as the Bronx market, the Flushing market and the Quincy market, respectively. Although Plaintiffs refer only to the Bronx, Flushing and Quincy markets in opposing Defendant's Motion to Dismiss, Pls.' Mem. 3, 6, Plaintiffs did not abandon the fourth alleged relevant market, because they defend it in their Opposition to Defendant's Motion to Strike. *See* Pls.' Mem. Opp. Mot. Strike 2-3, Doc. 15.

have adequately defined the Bronx, Flushing and Quincy markets. *See, e.g.*, *Am. Med. Ass'n v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 447 (S.D.N.Y. 2008) (holding that allegations of "numerous 'local markets' in which the [] Defendants currently provide their services" were adequate to provide notice of the markets being targeted, and thus sufficient to survive a Rule 12(b)(6) motion to dismiss).

With respect to the fourth relevant geographic market, which is described in the Amended Complaint as "other areas and markets in which IHS currently is in the process of planning for or opening facilities," Am. Compl. ¶ 58, the Court concludes that this allegation, even when read in combination with Plaintiffs' other allegations, *e.g. id.* ¶ 8, is "'too vague and too broad to explain what market the plaintiff is alleging to have been monopolized.'" *Am. Med. Ass'n*, 588 F. Supp. 2d at 447 (citation omitted). However, since this is merely a pleading deficiency, Plaintiffs may attempt to replead any additional, *specific* relevant geographic markets, should they choose to file a Second Amended Complaint.

Therefore, Defendant's Motion to Dismiss all of Plaintiffs' claims for failure to adequately plead the relevant market is DENIED.

**B. Monopoly and Market Power**

Defendant suggests in conclusory fashion that Plaintiffs cannot establish the requisite level of monopoly or market power for any of their claims.[6] Def.'s Mem. 13-14; *see also* Reply Mem. 4-5. To the extent Defendant's assertions are based on the extrinsic materials submitted,

---

[6] Although Plaintiffs don't explicitly dispute Defendant's contention that monopoly or market power is an essential element for each of their causes of action, the Court notes that monopoly power is not a necessary element of a conspiracy to monopolize claim. *See supra* note 3. Additionally, the Second Circuit has "not required proof of market power in § 1 cases," because "[i]f plaintiff can demonstrate an actual adverse effect on competition, such as reduced output, there is no need to show market power in addition." *Geneva Pharms.*, 386 F.3d at 509 (internal citations omitted).

they have not been considered by the Court.[7]  *See* Def.'s Mem. 12-14.  Further, the case law cited by Defendant does not support dismissing any of Plaintiffs' claims at the pleadings stage on the basis Defendant suggests.  For example, a similar argument was explicitly rejected in one of the opinions Defendant cites.  *See Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 340 (D. Vt. 2010) ("Certainly there is no authority for dismissing a complaint at the pleading stage based upon [defendant's] approach of simply adding up the [facilities] in the relevant geographic market, determining what percentage of the number of [facilities] are owned by [defendant], and dismissing the case if that number is less than 30%."); *see also supra* notes 3, 6.

Therefore, Defendant's Motion to Dismiss all of Plaintiffs' claims for failure to plead sufficient monopoly or market power is DENIED.

### C. Willful Acquisition or Possession of Monopoly Power & Anticompetitive Conduct

As noted above, in addition to pleading "monopoly power" or a "dangerous probability of achieving monopoly power," a plaintiff claiming monopolization or attempted monopolization must also allege, respectively, "the willful acquisition or maintenance of that power," *Grinnell*, 384 U.S. at 570-71, or "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize . . . ." *Spectrum Sports,* 506 U.S. at 456.  However, Defendant did not explicitly address those elements of Plaintiffs' claims anywhere in its motion papers.[8]  Instead, as noted above, Defendant challenged the sufficiency of the four causes of action collectively by pointing out purported deficiencies in particular categories of

---

[7] The Court has likewise disregarded Plaintiffs' arguments in response to Defendant's assertions, to the extent they are based on extrinsic materials.  *See* Pls.' Mem. 8.

[8] Since the "willful acquisition or possession of monopoly power" element of a monopolization claim is generally plead by alleging anticompetitive conduct, the Court addresses the second element of Plaintiffs' monopolization claim and the "anticompetitive conduct" element of Plaintiffs' attempted monopolization claim together.  With respect to the remaining element of Plaintiffs' claim of attempted monopolization—a specific intent to monopolize or destroy competition—the Second Circuit has explained that courts may infer a specific intent to monopolize from allegations of anticompetitive conduct.  *Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 74 (2d Cir. 1988) (citation omitted).

11

alleged conduct (e.g., "exclusive dealing," "predatory hiring," and "disparagement"), but does not address *any* of Plaintiffs' causes of action directly.  *See* Def.'s Mem. 15-25.  For example, from within the category of alleged "inappropriate business conduct," Am. Compl. ¶¶ 80-102, Defendant singles out the allegation of "threatening current referral sources, patients and staff members with dire consequences if they 'jump ship' to a competitor," *id.* ¶ 81, and then attempts to attack the allegation as insufficient to plead a claim of "predatory hiring," citing to a single, inapposite case from outside this Circuit discussing such a claim on a motion for summary judgment.  Def.'s Mem. 20-21.  Similarly, Defendant selectively refers to the allegation that DaVita engaged in "disparagement of potential competitors—including IHS—to prospective patients and referral sources," and then argues that the "disparagement claim" is inadequately plead, ignoring the surrounding allegations and again citing to cases deciding such a claim at the summary judgment stage.  *Id.* at 19-20.  These arguments fail because the Amended Complaint does not include distinct causes of action for "predatory hiring" or "disparagement."  Rather, Plaintiffs allege that Defendant violated § 1 and § 2 of the Sherman Act based on the aggregate of the anticompetitive conduct alleged in the Amended Complaint.

It is for this reason that none of these arguments provide a basis for dismissing any of the individual causes of action, because none of Plaintiffs' causes of action are based on just one particular category of conduct.[9]  *See Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) (holding that Court of Appeals erred by addressing plaintiff's allegations as separate claims, because in an antitrust case "plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate

---

[9] As noted above, Defendant's arguments suffer from myriad deficiencies; however, in the interest of conserving judicial resources, and because Plaintiffs are granted leave to replead, the Court has not included in this opinion a detailed explanation of why each of Defendant's arguments are without merit.

12

clean after scrutiny of each."); *see also, e.g.*, *N.Y. MedScan LLC v. N.Y. Univ. Sch. of Med.*, 430 F. Supp. 2d 140, 149 (S.D.N.Y. 2006) (Chin, J.) (denying motion to dismiss complaint alleging various Sherman Act claims where defendant "selectively refer[red] to allegations in the complaint, ignoring the complete picture painted by plaintiffs.").

Although the Court carefully considered all of Defendant's arguments and—to the extent possible—endeavored to apply them to the causes of action asserted in the Amended Complaint, "[t]here is no simple rule for determining when behavior is anticompetitive," and "[t]he question to be answered is the fact-specific question whether the challenged conduct is 'exclusionary' or 'predatory.'" *Creative Copier Servs. v. Xerox Corp.*, 344 F. Supp. 2d 858, 865 (D. Conn. 2004) (citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602 (1985)); *see also Rome Ambulatory Surgical Ctr. v. Rome Mem'l Hosp.*, 349 F. Supp. 2d 389, 416-17 (N.D.N.Y. 2004) (same). This determination can only be answered by considering the alleged conduct as a whole in the context of the relevant market and in light of the parties' respective roles therein. *See Aspen Skiing Co.*, 472 U.S. at 605; *see also United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001) ("Whether any particular act of a monopolist is exclusionary, rather than merely a form of vigorous competition, can be difficult to discern: the means of illicit exclusion, like the means of legitimate competition, are myriad."). Moreover, "it is well settled that acts which are in themselves legal lose that character when they become constituent elements of an unlawful scheme," *Cont'l Ore Co.*, 370 U.S. at 707 (citations omitted), and that "[b]ehavior that otherwise might comply with antitrust law may be impermissibly exclusionary when practiced by a monopolist." *United States v. Dentsply*, 399 F.3d 181, 187 (3d Cir. 2005) (citation omitted).

Defendant's failure to address the alleged conduct in the aggregate, and with particular reference to the elements of Plaintiffs' causes of action, precludes the Court from dismissing

Plaintiffs' claims of monopolization or attempted monopolization pursuant to Rule 12(b)(6). This is so because even if Defendant is right that, for example, Plaintiffs did not adequately allege "predatory hiring" and "disparagement" claims, the underlying conduct may still be considered in determining the sufficiency of the causes of action Plaintiffs actually alleged. Therefore, Defendant's Motion to Dismiss Plaintiffs' claims of monopolization and attempted monopolization (First and Second Causes of Action) is DENIED.

However, the Court notes that there are what appear to be inconsistent and contradictory allegations in the Amended Complaint that, while not fatal to Plaintiffs' claims at this stage, would benefit from an amended pleading.[10] Therefore, should Plaintiffs choose to file a Second Amended Complaint to replead the conspiracy causes of action that are dismissed without prejudice, *see infra*, they are granted leave to replead the claims of monopolization and attempted monopolization as well.

D. **Conspiracy to Monopolize Claim**

Defendant's only remaining argument for dismissing the Amended Complaint is directed specifically, and solely, at Plaintiffs' claim of conspiracy to monopolize under Section 2. *See supra* note 1; Def.'s Reply Mem. 9-10. Defendant asserts that the Section 2 conspiracy claim fails because Plaintiffs have not alleged that any of the purported co-conspirators shared DaVita's specific intent to monopolize the market for outpatient dialysis services. Def.'s Mem. 14-15. In response, Plaintiffs contend that they have adequately pleaded DaVita's specific intent

---

[10] For example, Plaintiffs' definition of the relevant product market excludes HHD, *see* Am. Compl. ¶¶ 31, 34-35, 43, but Plaintiffs rely on alleged anticompetitive conduct in the HHD market to support their antitrust claims. *Id.* ¶¶ 164-75. Additionally, Plaintiffs allege that Davita prevented competitors from entering the relevant markets by charging lower prices than competitors could sustain, *id.* ¶ 72, and also allege that DaVita's alleged conduct adversely affected competition in the relevant markets in the form of, *inter alia*, "prices above competitive levels." *Id.* ¶ 5. While the Court has accepted all of Plaintiffs' factual allegations as true for purposes of deciding the instant motion, Plaintiffs would be well-served by clarifying these and other seemingly inconsistent allegations, should they choose to file a Second Amended Complaint.

14

to monopolize, and that the allegations of third parties "acquiesce[ing] in DaVita's scheme" are sufficient to satisfy the specific intent element of a Section 2 conspiracy. Pls.' Mem. 23. Neither party cites to any case law from within this Circuit discussing the shared, specific intent element of a conspiracy to monopolize claim at the pleadings stage.

While Defendants are correct in their assertion that a shared, specific intent to create a monopoly is an element of a conspiracy claim under section 2,[11] the Second Circuit has held that such intent may be inferred from alleged anticompetitive conduct, even at much later stages in the proceedings. *See, e.g.*, *Ne. Tel. Co. v. Am. Tel. & Tel. Co.*, 651 F.2d 76, 85-86 (2d Cir. 1981). By their own admission, however, Plaintiffs' allegations of intent to monopolize relate only to *DaVita*'s intent to achieve a monopoly. Pls.' Mem. 23; *see, e.g.*, Am. Compl. ¶¶ 4, 127, 139, 147. The Amended Complaint does not allege that any of the referral sources, managed care companies or pharmaceutical companies shared this intent, nor are there any factual allegations of anticompetitive conduct by those third parties from which such a shared, specific intent could be inferred. Indeed, Plaintiffs' allegations of DaVita pressuring or threatening such third parties into certain agreements point in the opposite direction. *See, e.g.*, Am. Compl. ¶¶ 121-24, 128, 141, 152. Even drawing all reasonable inferences in Plaintiffs' favor, the Amended Complaint does not plausibly allege a shared, specific intent to monopolize.

---

[11] The Third Circuit cases relied on by Plaintiffs to support their argument to the contrary involve—as Defendants emphatically noted in their Reply Memorandum—conspiracy claims under Section 1. *See* Def.'s Reply Mem. 9-10. Defendant's vehement reaction to Plaintiffs' reliance on Section 1 conspiracy cases seems unwarranted especially since Defendant cited to a case involving a Section 1 conspiracy claim in their opening memorandum. *See* Def.'s Mem. 14. The district court case cited by Plaintiffs—which Defendant didn't address in its Reply—is a section 2 case; however, the authority cited therein involved a Section 1 conspiracy. Although conspiracies under Section 1 and Section 2 are not "wholly different," as Defendant asserts, Def.'s Reply Mem. 9, the Second Circuit has recognized a distinction between the two as regards the specific intent element. *See Int'l Distrib. Ctrs., Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 793 (2d Cir. 1987) ("Unlike the proof required to establish a conspiracy to monopolize under section 2, a specific intent to create a monopoly is not required under section 1," though a section 1 claim does require "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement" (citations and internal quotation marks omitted)).

Therefore, Defendant's Motion to Dismiss Plaintiffs' conspiracy to monopolize claim (Third Cause of Action) is GRANTED.  However, should Plaintiffs choose to file a Second Amended Complaint, they are granted leave to replead the conspiracy to monopolize claim to the extent they can fairly and properly assert factual allegations sufficient to state such a claim.

## V. Section 1 of the Sherman Act

Section 1 of the Sherman Act makes it illegal to enter into a "contract, combination . . . or conspiracy" to restrain trade or commerce.  15 U.S.C. § 1.  To properly plead a violation of Section 1, a plaintiff must allege that (1) Defendant was involved in a contract, combination or conspiracy that (2) operated unreasonably to restrain interstate trade.  *In re Elevator Antitrust Litig.,* No. 04 Civ. 1178 (TPG), 2006 WL 1470994, at *7 (S.D.N.Y. May 30, 2006) (citation omitted), *aff'd*, 502 F.3d 47 (2d Cir. 2007).  The Fourth Cause of Action in the Amended Complaint alleges that Defendant "entered into agreements with physicians and other referral sources, managed care companies, pharmaceutical manufacturers, landlords, and others, the intent, effect, and purpose of which was to unlawfully and unreasonably restrain trade in the local markets for outpatient dialysis services in which Plaintiffs compete," in violation of Section 1 of the Sherman Act.  Am. Compl. ¶ 196.  Plaintiffs rely on these purported *agreements* as the basis for asserting a Section 1 claim of a *conspiracy* to restrain trade.  *See id.* ¶ 197; Pls.' Mem. 21-23.

Although Defendant did not offer any arguments explicitly addressing Plaintiffs' Section 1 claim, it is clear to the Court that the allegations in the Amended Complaint fall far short of what is required to plead concerted action to support a Section 1 conspiracy claim under *Twombly*.  550 U.S. at 556-57 ("Without more, . . . a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); *see also Anderson News,*

16

*L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) ("Conclusory allegations of 'participation' in a 'conspiracy' have long been held insufficient to state a claim." (citations omitted)), *cert. denied*, 133 S. Ct. 846 (2013).

Plaintiffs have alleged various forms of conduct undertaken by DaVita that were allegedly designed to exclude IHS and other, unidentified competitors from the relevant markets. The majority of the allegations in the Amended Complaint describe unilateral conduct by DaVita, such was warehousing spaces and operating licenses, commencing "baseless" lawsuits, and engaging in various forms of "inappropriate business conduct," which does not fall within the scope of Section 1 of the Sherman Act. *See Volvo N. Am. Corp.*, 857 F.2d at 70 (citation omitted). The only allegations that point to any sort of concerted action are those that relate to the purported agreements between DaVita and various third parties. *See* Am. Compl. ¶¶ 127-56, 164-75. "The ultimate existence of an 'agreement' under antitrust law, however, is a legal conclusion, not a factual allegation." *Mayor and City Council of Baltimore, Md. v. Citigroup, Inc.*, Nos. 10 Civ. 0722, 10 Civ. 0867, --- F.3d ----, 2013 WL 791397, at *4 (2d Cir. Mar. 5, 2013) (citing *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 319 n.2 (2d Cir. 2010)). The Amended Complaint does not set forth any specific facts regarding any of the alleged agreements, and it does not contain any other factual allegations to support a plausible inference of an unlawful agreement to restrain trade between Defendant and anyone else. *Twombly,* 550 U.S. at 556-57. Even accepting all of Plaintiffs' factual allegations as true, the Amended Complaint "neither aver[s] nor substantiate[s] conspiratorial activity." *Mathias v. Daily News, L.P.,* 152 F. Supp. 2d 465, 484 (S.D.N.Y. 2001) (dismissing § 1 and § 2 conspiracy claims for failure to state a claim, because the complaint contained "no information as to the identities of the co-conspirators, the nature of their conspiracy, how the participants attempted to accomplish

their objectives, and what overt acts, if any, they performed towards the fulfillment of their conspiracy.").

Plaintiffs' § 2 conspiracy to monopolize claim, which is based on nearly identical allegations, is subject to dismissal for the same reasons. *In re Elevator Antitrust Litig.,* 502 F.3d at 50 & n.3 (explaining that *Twombly*'s pleading requirements apply equally to Section 1 and Section 2 conspiracy claims); *see also Fort Wayne Telsat v. Entm't and Sports Programming Network*, 753 F. Supp. 109, 114-15 (S.D.N.Y. 1990) (dismissing conspiracy to monopolize claim where plaintiff failed to identify any purported co-conspirators).

Defendant's Motion to Dismiss Plaintiffs' conspiracy to restrain trade claim (Fourth Cause of Action) is GRANTED.

However, since the Court's reason for dismissing Plaintiffs' conspiracy claims was not asserted by Defendant or briefed by the parties, Plaintiffs will be given leave to replead, should they choose to file a Second Amended Complaint. If Plaintiffs choose to refile, they would be well served by refining the factual allegations for all of their causes of action, and to seriously consider whether each claim can be fairly and properly supported given Plaintiffs' prior opportunity to fix the deficiencies in their pleadings and their failure to do so thus far.

## VI. Conclusion

For the reasons set forth above, Defendant's Motion to Strike is DENIED, and Defendant's Motion to Dismiss is DENIED in part and GRANTED in part. The Clerk of the Court is respectfully directed to terminate the pending motions. Docs. 11, 13.

Plaintiffs' Third and Fourth Causes of Action are dismissed without prejudice. Plaintiffs are also granted leave to replead their First and Second Causes of Action, should they choose to file a Second Amended Complaint. Plaintiffs shall file any amended pleading on or before April 22, 2013.

It is SO ORDERED.

Dated:   March 31, 2013
         White Plains, New York

_____
Edgardo Ramos, U.S.D.J.