

3 Park Plaza, 3rd Floor, Irvine, CA  92614-8505 ■ p949 263-8400 ■ f949 263-8414

John S. Gibson
(949) 798-1330
JGibson@crowell.com

June 1, 2015

**VIA ECF**

Hon. Lisa Margaret Smith
United States Magistrate Judge
Charles L. Brieant Jr. Courthouse
300 Quarropas Street, Courtroom 520
White Plains, NY 10601-4150

    Re:    <u>IHS Dialysis v. DaVita</u>**, Index No. 12 Civ. 2468 (ER) (LMS) (Undue Burden)**

Your Honor:

As explained in DaVita's concurrently-filed letter brief, the documents sought in IHS's motion to compel are outside the scope of Request No. 39.  But in the event the Court decides the documents are within the scope, the motion should still be denied.  As shown in detail below, spending another six months—and millions of dollars more—to produce marginally relevant documents would place an undue burden on DaVita outweighing any benefit of the discovery.

**ARGUMENT**

As the Court recognized, the Court must be "concerned—and indeed, the revised Civil Procedure laws make a pointed effort to assure that courts are concerned—with *the proportionality of the discovery to the case itself*."  Hr'g Tr. 11:8-11, May 27, 2015 (emphasis added) (Ex. 1) (excerpt attached but full transcript attached to DaVita's concurrently-filed brief).  The Court asked IHS: "[i]f we're talking about . . . another $3.4 million, and at least six months, to get this one component of discovery completed, is that something that should give me pause, serious pause?"  *Id*. at 11:11-11.  Indeed, pursuant to Rule 26(b) of the Federal Rules of Civil Procedure, the Court "must limit" otherwise discoverable information where the "*burden or expense of the proposed discovery outweighs its likely benefit*, considering the needs of the case,

Hon. Lisa Margaret Smith
June 1, 2015
Page 2

the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii) (emphasis added). As the Court noted, the new amendments to the Federal Rules of Civil Procedure underscore the importance of the "proportionality" analysis. *See* Fed R. Civ. P. 26(b)(1) (eff. Dec. 1, 2015) (Ex. 2). Here, the burden and expense greatly outweigh any likely benefit of the discovery sought. Further, the discovery would delay depositions by at least another six months, and, ultimately, further delay determination of this three-year-old case—a determination DaVita believes will confirm it did not violate the antitrust laws.

I. **The Discovery Sought Would Require DaVita to Engage in a Costly and Burdensome Review of Approximately 8 Million Pages of Documents that Have Marginal or No Relevance to this Case.**

**A. Relevance:** IHS claims that the conduct investigated in the FCA case reflects the same anticompetitive conduct alleged in this antitrust case. But central to the FCA case is the allegation that DaVita entered into joint venture transactions in clinics with physicians that allowed DaVita to pay "kickbacks" to physicians to ensure patient referrals. There are no allegations of such transactions in this case. In fact, DaVita had no joint ventures with physicians in the alleged Relevant Markets in New York or Massachusetts. *See, e.g.,* DaVita's Suppl. Resp. to IHS's Interrog. No. 2 (showing that DaVita wholly owns the facilities in the Relevant Markets, except that it has a 15% interest in the IHS facilities) (Ex. 3). Thus, documents relating to the alleged transactions in the FCA case are not relevant here.

DaVita produced 8,025,767 pages, from about 231,000 documents, in response to several governmental subpoenas issued over the course of three to four years. IHS contends that DaVita could simply hand over copies of the same productions it made to the government without further review. *See* Hr'g Tr. 13:25-14:6, May 26, 2015 (Ex. 1). DaVita believes that the

Hon. Lisa Margaret Smith
June 1, 2015
Page 3

documents have little or no relevance to IHS's antitrust claims. But, if DaVita were required to produce those documents, DaVita's attorneys in this case, Crowell & Moring (which did not represent DaVita in the FCA investigations), would have to review the documents in the context of this antitrust case to understand, among other things, how these "new" documents may impact its defense.

IHS argues that DaVita's "wordsmithing" of Request No. 39 caused the burden that it now complains about. But DaVita has always taken the position—including at the February 6, 2014 hearing—that discovery of investigations concerning "anticompetitive behavior" needed to be in the context of an alleged antitrust violation. As DaVita explained at the February 6, 2014 hearing, DaVita was concerned with the potentially broad scope of Request No. 39 given the use of the phrase "antitrust issues." This is because "antitrust issues" would encompass Hart-Scott-Rodino investigations triggered automatically just by the dollar value of DaVita's proposed acquisitions. Those proposed acquisitions have no relevance to the alleged violation of the antitrust laws here through actual or attempted monopolization without an acquisition. Hr'g Tr. at 86:12-87:9, 87:20-24, Feb. 6, 2014 (Ex. 4). DaVita argued that Request No. 39 should be narrowed to address what is really at issue in this case—investigations by the Antitrust Division of the DOJ or the FTC for alleged anticompetitive behavior. *Id.* at 87:25-88:7; 90:25-91:2. And *IHS* confirmed the scope is limited to conduct that "would violate the antitrust laws." *Id.* at 91:3-9. It is within this context that the Court agreed with DaVita and modified the phrase "antitrust issues" to "anticompetitive behavior." *Id*. at 91:10-13.

   B.  **Review for Confidentiality:** DaVita further needs to review the documents produced in the FCA investigations for confidentiality of competitively-sensitive information. Because the FCA case was a government action and not a civil action by a competitor in the market, DaVita

Hon. Lisa Margaret Smith
June 1, 2015
Page 4

has not reviewed the documents for confidentiality.  DaVita will have to do that here to determine whether documents need to be protected as "Confidential" or "Attorneys Eyes Only" under the protective order.  Moreover, because some documents are subject to confidentiality provisions with third parties, e.g., joint venture members, appropriate notices of disclosure would be required before production (the volume and precise categories of documents at issue cannot be known unless DaVita conducts this review).[1]  If a third party objects to disclosure, more time and expense would be incurred to determine which documents relate to the objections.

  **C.  Privilege Review:**  DaVita produced certain privileged documents to the government in the FCA investigations pursuant to a non-waiver of privilege agreement.  DaVita specifically negotiated that agreement with the government solely for purposes of the FCA investigations.  It does not apply to any third party or other civil litigations, and DaVita would not agree to a similar agreement in this instance.  Thus, additional time and expense would be required to review privileged documents.

  **D.  Undue Expense:**  Based on the fees and costs that DaVita has incurred for its review and production of documents in this case, DaVita estimates that it will cost at least another $4 million—on top of the $2.9-plus million it has already incurred—to review and produce the documents sought by IHS.[2]  This is disproportionate to any benefit potentially derived from the

---

[1] There are no lists/indices that would allow DaVita to quickly determine the third parties to be noticed or documents at issue.  Also, because this is a civil action by a competitor, some third parties may take a different stance on objections than they did in the government investigations.

[2] At the hearing, DaVita conservatively calculated that it spent $1.3 million in attorneys' fees and $1 million in data collection and processing costs for its review of approximately 160,300 documents.  DaVita thus calculated that it would cost at least $3.4 million for DaVita to review (Continued…)

Hon. Lisa Margaret Smith
June 1, 2015
Page 5

discovery, particularly given that the total document production costs would exceed the single damages—$5 million—claimed by IHS. *See* Pls. Initial Disclosures at 5 (Ex. 5).

## II. Reviewing Two Other Categories of Documents—Beyond the 8 Million Pages Produced to the Government—Would Increase the Undue Burden and Expense.

Two additional categories of documents are potentially at issue: communications between DaVita's attorneys and the government relating to the FCA investigations, and the work product of those attorneys. If the Court grants the motion to compel, DaVita would need to search for and collect documents from three law firms (McDermott Will & Emery LLP; Hogan Lovells; and Sidley Austin), as well as DaVita's in-housel legal team. The four sets of lawyers were in frequent communication with each other and the subpoenaing government officials during the course of the investigations from 2010 through 2013, and in active settlement negotiations from early 2013 through fall 2014. The volume of communications and work product over the four and a half years of representation would be substantial. They are at most marginally relevant—and likely inadmissible hearsay. Thus, the burden and expense of this discovery, which would include preparing a voluminous privilege log of the work product, outweighs any benefit.

Respectfully submitted,

*/s/ John S. Gibson*

John S. Gibson

---

the 231,000 documents (8 million pages) produced in the FCA investigations. After the hearing, DaVita conducted a more detailed review of its invoices and found that attorneys' fees for document production in this case are closer to $1.9 million ($2.9 million including data processing and production costs). Thus, the actual revised estimate is over $4 million: (231,000/160,000) x $2,900,000 = $4,186,875.